## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ZIPORA MAZENGO<br>c/o 734 East University Blvd.<br>Silver Spring, MD 20903, | ) ) ) ) | |
| Plaintiff, | ) ) | **COMPLAINT** |
| v. | ) ) | |
| ALAN S. MZENGI<br>1820 Middlebridge Drive<br>Silver Spring, MD 20906 | ) ) ) ) | Civil Action No. _____ |
| STELLA MZENGI<br>1820 Middlebridge Drive<br>Silver Spring, MD 20906 | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

Zipora Mazengo, by and for her Complaint in the above-captioned matter, alleges as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff Zipora Mazengo (hereinafter "Ms. Mazengo" or "Plaintiff") was trafficked for forced labor into the United States by Defendants Alan S. Mzengi and Stella Mzengi (collectively, "Defendants").  The Defendants effectively imprisoned Ms. Mazengo and subjected her to slavery-like practices, involuntary servitude, and forced labor, all in violation of international and federal law.

2.      During the entire four-year period the Defendants forced Ms. Mazengo to work, the Defendants never paid her.  The Defendants held Ms. Mazengo as a virtual prisoner in their residence, stripping her of her passport, refusing to permit her to leave the house unaccompanied,

and forcing her to labor in their catering business, thus profiting from her enforced servitude and exploiting her fear of deportation and possible imprisonment.

3.      The Defendants trafficked Ms. Mazengo into the United States under false pretenses, providing her a written contract that promised fair wages and good working conditions.  Instead, the Defendants required her to work long hours without pay, while subjecting her to severe psychological and physical abuse.

4.      Ms. Mazengo seeks damages and restitution for unpaid wages, damages for trafficking her into the United States under false pretenses, and damages for breach of contract and various state torts.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1351, and 29 U.S.C. § 216(b).  This Court has supplemental jurisdiction over Ms. Mazengo's state-law claims pursuant to 28 U.S.C. § 1367.  This Court has jurisdiction over Ms. Mazengo's international-law claims pursuant to 28 U.S.C. §§ 1331 and 1367.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(d), because the Defendants are citizens of a foreign state.

## PARTIES

7.      Plaintiff Zipora Mazengo is a 27-year-old citizen of Tanzania, who resides in the State of Maryland.  At the time of the events that give rise to this Complaint, Ms. Mazengo was legally residing in the United States by virtue of a duly issued A-3 Employment Visa. Ms. Mazengo worked for the Defendants from June 27, 2000, through August 2004.  Her ability to speak and understand English was limited prior to and during the four years she forced to work in the Defendants' home.

8.     At all times relevant hereto, Defendant A. Mzengi was stationed in Washington, D.C., as the Minister-Counselor at the Embassy of Tanzania to the United States. From June 2000 until on or about August 2000, A. Mzengi resided, along with his wife, Defendant S. Mzengi, and three small children, at 9908 Pomona Drive, Bethesda, Maryland. From on or about August 2000 through August 2004, A. Mzengi, with his wife and children, resided at 15 Grantchester Place, Gaithersburg, Maryland. Upon information and belief, A. Mzengi currently resides at 1820 Middlebridge Drive, Silver Spring, Maryland.

9.     Upon information and belief, Defendant S. Mzengi is a citizen of Tanzania who currently resides part-time at 1820 Middlebridge Drive, Silver Spring, Maryland. From June 2000 until on or about August 2000, S. Mzengi resided, along with her husband, Defendant A. Mzengi, and their three small children, at 9908 Pomona Drive, Bethesda, Maryland. From on or about August 2000 through August 2004, S. Mzengi, with her husband and children, resided at 15 Grantchester Place, Gaithersburg, Maryland.

10.     Upon information and belief, the Defendants operated a catering business in Washington, D.C., and Maryland, based out of their residence in Silver Spring, Maryland, and catering to clients in the metropolitan Washington area.

## FACTUAL ALLEGATIONS

### Circumstances Leading to Plaintiff's Recruitment into Forced Labor

11.     Ms. Mazengo was born in Tanzania on January 29, 1980. Ms. Mazengo worked on a farm in Tanzania most of her life.

12.     Defendant S. Mzengi's younger sister, Juliet Mwimbwa, is married to Plaintiff's brother. Defendant S. Mzengi told her sister, Juliet Mwimbwa, that she needed someone to work for her family in the United States.

3

13.     At this time, the Defendants were already in the United States, where A. Mzengi had a position as Minister-Counselor within the Embassy of Tanzania, located at 2139 R Street, N.W., in Washington, D.C.

14.     At the time Ms. Mazengo learned about this job opportunity, Ms. Mazengo was living in Tanzania's capital, Dar-es-Salaam, doing domestic work.

15.     Juliet Mwimbwa, acting as agent for the Defendants, asked her husband Gabriel, Ms. Mazengo's brother, to talk to Ms. Mazengo about the opportunity to work for the Defendants.

**Promises by the Defendants to Entice Plaintiff to Travel to the United States**

16.     Upon information and belief, after her brother Gabriel conveyed the Defendants' offer to Ms. Mazengo, Defendant A. Mzengi prepared a contract at the Embassy of Tanzania explaining what the terms of employment would be, and he sent the contract to Ms. Mazengo.

17.     S. Mzengi's grandfather Stanley, acting as agent for the Defendants, read the contract to Ms. Mazengo in Swahili because Ms. Mazengo could not understand English, the language in which the contract was written.

18.     This contract was Ms. Mazengo's first experience with a written contract for employment.

19.     The contract promised a workday of eight hours and a workweek of five days per week. The contract stated that Ms. Mazengo's duties would be to care for the Defendants' children and to perform household work. The contract promised a salary of $900 a month, from which $150 would be deducted for room and board. The contract also promised overtime pay for hours in excess of the regular 40-hour workweek.

20.     Ms. Mazengo accepted the terms of the contract, thus forming an employment contract with the Defendants.

4

21.     Ms. Mazengo and Defendant A. Mzengi each signed the contract on June 12, 2000.

22.     The Defendants made all arrangements to bring Ms. Mazengo to the United States, including helping her obtain both a passport and her A-3 visa, and purchasing her plane ticket to fly from Dar-es-Salaam to Washington, D.C.

23.     Upon information and belief, Defendant A. Mzengi secured the support of the Embassy of Tanzania in Washington, D.C., to obtain permission to bring Ms. Mazengo to the United States on an A-3 visa.

24.     Ms. Mazengo arrived in the United States on or about June 27, 2000, and began working immediately thereafter in the Defendants' home in Bethesda, Maryland.

**The Defendants' Forced Labor and Exploitation of Ms. Mazengo in the United States**

25.     When Ms. Mazengo began working for the Defendants, she quickly discovered that the Defendants intended to violate all the terms of her contract as described in Paragraph 19 of this Complaint.

26.     Instead of working eight hours per day, Ms. Mazengo was required to work from 6 a.m. until at least 10:30 p.m. each day, more than sixteen hours per day. The Defendants took away her passport and refused to return it.

27.     Each weekday, Ms. Mazengo was forced to do the following work, *inter alia*:

a.     In the early morning, from approximately 6:00 a.m. until approximately 8:30 a.m., Ms. Mazengo woke the children and readied them for school, prepared their breakfasts, prepared breakfast for S. Mzengi and occasionally for A. Mzengi;

b.     After the older children went to school, Ms. Mazengo was required to clean the house. While cleaning, she carried the Defendants' youngest child on her back, in a kind of sling.

      c.      Ms. Mazengo, *inter alia*, was required to clean the six bedrooms, clean the four bathrooms, clean the rooms on the main floor, vacuum, wash dishes, do laundry, change bedding and towels, dust, and mop throughout the Mzengis' house.

      d.      In the afternoons, Ms. Mazengo prepared lunch for all three children when they returned from school, and then looked after the children until their bedtime.

      e.      In the evenings, Ms. Mazengo prepared dinner for the family, and washed dishes after the meal.  Occasionally, she also had to carry the youngest child until he fell asleep.

      f.      Ms. Mazengo also did all other tasks S. Mzengi demanded of her, both during the day and at night.  Failure to perform any task resulted in verbal abuse, usually from Defendant S. Mzengi.

28.      On weekends, because the children were not in school, Ms. Mazengo was forced to look after all three children.  She also was required to continue with the cleaning and cooking, as dictated by the Mzengis.

29.      When the Defendants held parties, which they did several times per month, they required Ms. Mazengo to prepare the food, set up, and serve as wait staff at the parties.  After these events, she was also required to clean up.  These parties lasted generally until 12:00 a.m., but occasionally Ms. Mazengo was forced to work as late as 3:00 a.m.

30.      On approximately three occasions when the Defendants traveled outside the country, Ms. Mazengo was required to look after the three children on her own.  On one such occasion, the Defendants left Ms. Mazengo to care for their children alone for one month.  On two other occasions, Defendants left Ms. Mazengo to care for their children for approximately one week.

31.    When the Defendants had houseguests, Ms. Mazengo was required to do the house guests' laundry, clean their rooms, and do extra cooking.

32.    The Defendants also made Ms. Mazengo do chores outside the house, such as raking leaves and shoveling snow.

33.    The Defendants' home in Gaithersburg, Maryland, comprised three floors, with four bedrooms upstairs, two bedrooms in the basement, four bathrooms, and a two-car garage.

**Forced Labor in Support of the Defendants' African Food Catering Business**

34.    Upon information and belief, the Defendants A. Mzengi and S. Mzengi operated a business selling prepared African food.  Defendant S. Mzengi required that Ms. Mazengo do the cooking for this commercial enterprise.

35.    Customers would come to the Mzengi residence to pick up the prepared food in containers.  Ms. Mazengo was required to prepare and package the food, working alongside Defendant S. Mzengi.

36.    Although Defendant S. Mzengi received money for these transactions, Ms. Mazengo never received any payment or salary for her efforts preparing food for this commercial enterprise.

37.    Upon information and belief, the Defendants A. Mzengi and S. Mzengi solicited business for the African food-catering business at diplomatic events held in Washington, D.C., and in Maryland.  Advertising for the catering company was done by word of mouth in the African expatriate community.

38.    The Defendants forced Ms. Mazengo to work for the catering company, located in the Defendants' kitchen, in addition to all of her other chores.  She did not receive time off or any assistance with the other tasks that she was required to accomplish, nor did she receive any pay for such work.

39.     The commercial catering venture received at least one large order each month. Over the course of four years, Ms. Mazengo was forced to prepare African food for a wedding with more than one hundred guests, for large dinner parties at customers' homes, and for holiday parties and events.

**The Defendants' Failure to Pay Plaintiff Her Wages**

40.     For all the work Ms. Mazengo did for the Defendants, the Defendants never paid her any money.

41.     On several occasions, Ms. Mazengo requested her wages, and the Defendants refused to pay her. Instead, the Defendants threatened her with deportation and physical harm.

42.     The Defendants' refusal to pay Plaintiff violated the terms of Ms. Mazengo's written contract with the Defendants and was not the result of any *bona fide* dispute.

43.     On occasions when both the Defendants were traveling outside the country, the Defendants left Ms. Mazengo with no money. Defendant A. Mzengi did grocery shopping in advance, but he provided no money for Ms. Mazengo to care for the children. Instead, he left money for the children's care with his relative, who lived at a considerable distance from the Defendants' house. Ms. Mazengo did not know how to get to the relative's house in case of any emergency that required money, as she was never permitted to leave the house.

**The Defendants' Isolation and Confinement of Ms. Mazengo**

44.     The Defendants ensured that Ms. Mazengo was kept utterly isolated.

45.     The Defendants never permitted Ms. Mazengo to take a bus, and never showed her where she could access public transportation.

46.     Ms. Mazengo does not know how to drive. The Defendants did not teach her to drive or provide any car service or other transportation.

47.     The Defendants did not permit Ms. Mazengo to leave the residence without escort by one of the Defendants.  Ms. Mazengo left the house only in the company of the Defendants, who monitored her movements and her contacts with others.

48.     The Defendants did not permit Ms. Mazengo to attend worship services of her choice.

49.     The Defendants did not permit Ms. Mazengo to make any friends, or to meet with anyone outside of the immediate family.

50.     When Ms. Mazengo left the house, it was solely for the purpose of accompanying the children and caring for the children.  On only one occasion, for a medical visit, did she leave the house without the children.

51.     On occasion, visitors and customers for the Defendants' catering business entered the Defendants' house.  These visitors or customers spoke to Ms. Mazengo only rarely. One such visitor, who was able to speak Swahili, met Ms. Mazengo approximately three or four times. This visitor was later able to help Ms. Mazengo escape.

**The Defendants' Physical and Psychological Abuse, Neglect and Coercion**

52.     The Defendants S. Mzengi and A. Mzengi physically and emotionally abused and neglected Ms. Mazengo.

53.     On one occasion, when Ms. Mazengo was getting the youngest child ready for school, Defendant S. Mzengi yelled at Ms. Mazengo for not preparing her breakfast, and began hitting Ms. Mazengo on the face.  Defendant S. Mzengi then sent Ms. Mazengo outside in the freezing January weather, and left her outside knowing that Ms. Mazengo was wearing only a short-sleeved t-shirt and shorts.

54.     When Ms. Mazengo complained to Defendant A. Mzengi about the physical abuse she endured, he did nothing to intervene.  Instead, Defendant S. Mzengi threatened

Ms. Mazengo that "blood would spill" if Ms. Mazengo complained again to Defendant S. Mzengi's husband.

55.    Defendant A. Mzengi publicly humiliated Ms. Mazengo.  At his birthday party, Mr. Mzengi noticed guests stepping over some toys that his children had left out, and he began screaming at Ms. Mazengo to remove the toys at once.

56.    Defendant S. Mzengi threatened and abused Ms. Mazengo verbally, swearing at her and insulting Ms. Mazengo's family.

57.    Defendant S. Mzengi made threats against Ms. Mazengo's family.

58.    The Defendants confiscated Ms. Mazengo's passport upon her arrival in the United States, and refused to return the document to Ms. Mazengo when she requested it.

59.    Because Ms. Mazengo did not speak English and had few, if any resources to draw upon for assistance or aid, Ms. Mazengo was highly vulnerable to the Defendants' threats and coercion.

60.    The Defendants refused to provide medical care for Ms. Mazengo when she was ill in violation of their contract, which contained explicit promises of health insurance.

61.    When Ms. Mazengo's medical condition became so painful that she could not wear shoes, Defendant A. Mzengi nevertheless ordered her to go outside to shovel snow in her bare feet.

62.    When Ms. Mazengo could no longer walk without excruciating pain and bleeding from her feet, Defendant S. Mzengi finally took her to see a physician.  By this time, more than two years had elapsed since the medical condition had appeared.  During this time, Ms. Mazengo's condition had steadily worsened, necessitating out-patient surgery when she finally did see a doctor.

63.    When Ms. Mazengo requested permission to leave the Mzengi home in order to return to Tanzania to visit her dying sister, Defendant A. Mzengi refused to let her leave and refused to provide her a ticket back to Tanzania. Ms. Mazengo's sister died soon after this refusal.

**Ms. Mazengo's Escape from the Defendants**

64.    On or about August 2004, Defendant S. Mzengi was, upon information and belief, in Tanzania. Ms. Mazengo asked Defendant A. Mzengi, who remained with the children at the Mzengi home in Maryland, for her wages.

65.    In response, Defendant A. Mzengi purchased a one-way ticket for Ms. Mazengo to return to Tanzania. He gave Ms. Mazengo the ticket, as well as her passport, which he had taken from her four years before.

66.    After more than four years of working for the Defendants, Defendant A. Mzengi still refused to pay Ms. Mazengo any of her wages.

67.    Defendant A. Mzengi promised Ms. Mazengo she would receive her wages upon her return to Tanzania.

68.    Ms. Mazengo did not believe the promise of Defendant A. Mzengi.

69.    Ms. Mazengo made a phone call to one of the customers of the Mzengi Defendants' catering business, whom she had met briefly when the customer came to pick up African catered food prepared by Ms. Mazengo at the Defendants' home. Ms. Mazengo had called to say good-bye to this near-stranger, but when Ms. Mazengo began to weep, the individual asked what was wrong. Ms. Mazengo explained that she had been forced to work for four years, and never received any money. The individual told Ms. Mazengo that it was wrong that the Defendants had never paid Ms. Mazengo and offered to help Ms. Mazengo. The

11

individual called a taxi for Ms. Mazengo, and instructed her how to take it to her home. Because Ms. Mazengo had no money, the individual paid for the taxi to the home.

70.    Ms. Mazengo left the Defendants' house that day.

71.    Upon information and belief, a new domestic worker, another A-3 visa holder, arrived two days after the date that the Defendants intended Ms. Mazengo to depart.

## FIRST CLAIM FOR RELIEF

### Involuntary Servitude
### Pursuant to the Thirteenth Amendment to the U.S. Constitution and 18 U.S.C. § 1584

72.    Ms. Mazengo realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

73.    Ms. Mazengo brings this claim for relief under the private cause of action implied under the Thirteenth Amendment of the United States Constitution, and under 18 U.S.C. § 1584, which prohibit peonage and involuntary servitude.

74.    As alleged herein, the Defendants A. Mzengi and S. Mzengi used threats of physical harm and mental, physical, and legal coercion to induce Ms. Mazengo to work against her will, requiring her to work without pay.

75.    The Defendants' threats and coercion caused Ms. Mazengo to reasonably believe that she had no alternative but to continue her service for the Defendants.

76.    Ms. Mazengo was highly vulnerable to such threats and coercion. Defendant A. Mzengi's status as a high-ranking Tanzanian diplomat and government official only exacerbated this vulnerability. Because Defendant A. Mzengi, upon information and belief, runs the office providing visas to Tanzanian citizens in the United States, Ms. Mazengo could not even attempt to obtain a new passport from her Embassy.

77.    The Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with a criminal indifference to civil obligations, and with the wrongful intent of injuring Ms. Mazengo.  The Defendants committed these tortious acts in conscious disregard of Ms. Mazengo's rights.

78.    Through such actions, the Defendants directed, assisted, conspired, and acted in concert with each other to create and enforce a system of involuntary servitude prohibited by the Thirteenth Amendment of the United States Constitution  and 18 U.S.C. § 1584.

79.    As a direct and proximate result of these actions, Ms. Mazengo has sustained damages, including emotional distress, economic losses, and physical injury.  Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## SECOND CLAIM FOR RELIEF

**Trafficking with Respect to Peonage, Slavery, Involuntary Servitude or Forced Labor in Violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. §§ 1590, 1595**

80.    Ms. Mazengo realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

81.    By inducing Ms. Mazengo to accept employment with them in the United States through fraud and deception for the purposes of subjecting her to a condition of involuntary servitude, forced labor and enslavement, the Defendants engaged in trafficking of Ms. Mazengo in violation of 18 U.S.C. § 1590.  Plaintiff is permitted to bring a civil cause of action under the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. § 1595.

82.    The Defendants' actions were conceived of maliciously, in the spirit of mischief and a criminal indifference to civil obligations.

83.    Numerous international instruments, customary international norms, domestic statutes and case law, and international case law establish that human trafficking violates the law

of nations. Such authorities include: the Universal Declaration of Human Rights, Dec. 10, 1948,

G.A. Res. 217A (II), U.S. Doc. A/810 at 71; the International Covenant on Civil and Political

Rights, Dec. 16, 1966, 999 G.A. Res. 2200A(XXI), U.N. Doc. A/6316, 999 U.N.T.S. 17, 61

I.L.M. 368 (1967); the Slavery, Security, Forced Labor and Similar Institutions and Practices

Convention of 1926, Sept. 25 1926, 60 U.N.T.S. 253; the Supplementary Convention on the

Abolition of Slavery, the Slave Trade, and Institutions and Practices Similar to Slavery, Apr. 30,

1956, 266 U.N.T.S. 3; the Convention Concerning Forced or Compulsory Labour (ILO No. 29),

June 28, 1930, 39 U.N.T.S. 55; the Convention Concerning the Abolition of Forced Labour (ILO

No. 105), June 25, 1957, 320 U.N.T.S. 291; the Convention on the Elimination of All Forms of

Discrimination Against Women, December 18, 1979, G.A. res. 34/180, U.N. Doc. A/34/36; and

the Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and

Children, Supplementing the United Nations Convention Against Transnational Organized

Crime, Nov. 15, 2000, G.A. res. 55/25, annex II, U.N. Doc. A/45/49. These prohibitions against

trafficking in persons are reflected in United States law in the Trafficking Victims Protection Act

(TVPA), 18 U.S.C. § 1590, as well as other U.S. authorities.

84. As a direct and proximate result of the Defendants' actions, Ms. Mazengo has

sustained damages, including physical injury, emotional distress, and economic losses.

85. Plaintiff is entitled to recover damages in an amount to be proven at trial,

including attorneys' fees.

### THIRD CLAIM FOR RELIEF

**Forced Labor Violation of the Trafficking Victims
Protection Act of 2000, 18 U.S.C. § 1589**

86. Ms. Mazengo realleges and incorporates by reference each and every allegation

contained in the preceding paragraphs as if set forth fully herein.

14

87.    The Defendants knowingly obtained Ms. Mazengo's labor and services by threats of serious harm, scheme or pattern of behavior and/or abuse of the legal process within the Forced Labor provision of the Trafficking Victims Protection Act, 18 U.S.C. § 1589.

88.    Ms. Mazengo brings these claims pursuant to 18 U.S.C. § 1595, which provides a civil right of action for victims of forced labor.

89.    As a proximate result of the Defendant Mzengis' actions, Ms. Mazengo has suffered damages.

90.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

### FOURTH CLAIM FOR RELIEF

### Federal Minimum Wage

91.    Ms. Mazengo realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

92.    The Defendants employed Ms. Mazengo within the meaning of the Fair Labor Standards Act, 29 U.S.C. §§ 203(d)-(e).

93.    The Defendants willfully failed to pay Ms. Mazengo minimum wages, in violation of 29 U.S.C. § 206(a) and the United States Department of Labor regulations.

94.    At all times relevant hereto, the relationship between the Defendants and Ms. Mazengo was one of private master and servant, and Ms. Mazengo was not employed as if she were an employee of a governmental agency or authority.

95.    The Defendants' willful violation of the Fair Labor Standards Act entitles Ms. Mazengo to recovery of her unpaid minimum wages, which total not less than $128,125.00, an equal amount as liquidated damages, and reasonable attorneys' fees and costs of the action

pursuant to 29 U.S.C. §§ 201, *et seq.*, and the United States Department of Labor regulations, in addition to declaratory relief.

## FIFTH CLAIM FOR RELIEF

### State Minimum Wage and Overtime

96.    Ms. Mazengo realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

97.    The Defendants employed Ms. Mazengo within the meaning of the Maryland Wage and Hour Law, Md. Code Ann., Labor - Employment, §§ 3-401, *et seq.*

98.    The Defendants' intentional and willful failure to pay Ms. Mazengo the minimum wages required by law violates the Maryland Wage and Hour Law, from the commencement of her employment as a domestic worker from in or about June 2000, until approximately August 2004.

99.    The Defendants' willful failure to pay Ms. Mazengo overtime pay for work in excess of 40 hours per week violates the Maryland Wage and Hour Law from the commencement of her employment as a domestic worker from in or about June 2000, until approximately August 2004.

100.    At all times relevant hereto, the relationship between the Defendants and Ms. Mazengo was one of private master and servant, and Ms. Mazengo was not employed as if she were an employee of a governmental agency or authority.

101.    Ms. Mazengo is entitled to an award of treble damages for unpaid minimum wages and unpaid overtime compensation in an amount of not less than $510,000, plus reasonable attorneys' fees and costs of this action, pursuant to the Maryland Wage Payment and Collection Law, Md. Code Ann., Labor - Employment, §§ 3-501 – 3-507.1.

## SIXTH CLAIM FOR RELIEF

### Fraudulent Inducement

102.    Ms. Mazengo realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

103.    The Defendants intentionally and knowingly misrepresented to Ms. Mazengo the conditions of Ms. Mazengo's employment in the United States in order to induce her to come to the United States, under the pretense that, *inter alia,* Ms. Mazengo would be paid regularly and would be working only 40 hours per week.

104.    The Defendants made the above misrepresentations with the intention that Ms. Mazengo would rely on such in order to entice Ms. Mazengo to come to the United States and to force her to work as an unpaid domestic servant in their household.

105.    The Defendants decided to induce Ms. Mazengo to come to the United States knowing of Ms. Mazengo's difficult economic circumstances in Tanzania, and intending for her to rely upon their representations that employment in the United States would improve her ability to support herself and her family.

106.    Ms. Mazengo did in fact rely on the Defendants' misrepresentations to her detriment and, as a result, was forced to work as a domestic worker for the Defendants without pay, thereby suffering great economic, physical, and financial harm.

107.    The Defendants never intended to follow through, and did not follow through, on their promises, notwithstanding any of the aforementioned representations made to Ms. Mazengo.  The Defendants did not intend to pay Ms. Mazengo $900 per month, did not plan to give her any days off, did not intend to provide her health insurance, and did not intend to limit the hours of her workweek to forty hours per week.  Instead, the Defendants planned to force, and did force, Ms. Mazengo to work at least sixteen hours a day, seven days a week.

17

108.    At the time that the Defendants made the foregoing representations and promises to Ms. Mazengo, in the form of the written contract that they offered to her, they had no intention of carrying out such representations and promises.

109.    The Defendants made the foregoing misrepresentations with a conscious and deliberate disregard of the interests of others such that their conduct may be called willful or wanton, and such conduct has the character of outrage frequently associated with criminal conduct.

110.    At all times relevant hereto, the relationship between the Defendants and Ms. Mazengo was one of private master and servant.  Ms. Mazengo was not employed as if she were an employee of a governmental agency or authority.

111.    As a direct and proximate result of these actions, Ms. Mazengo has sustained physical and economic damages.

112.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## SEVENTH CLAIM FOR RELIEF

### Unjust Enrichment

113.    Ms. Mazengo realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

114.    Ms. Mazengo rendered services as a live-in domestic servant to the Defendants in good faith and with the expectation that she would be fairly compensated for such services.

115.    The Defendants accepted these services and in turn failed to compensate Ms. Mazengo for the fair market value of her services.

116.    The Defendants have been unjustly enriched at Ms. Mazengo's expense.

117.    At all times relevant hereto, the relationship between the Defendants and Ms. Mazengo was one of private master and servant, and Ms. Mazengo was not employed as if she was an employee of a governmental agency or authority.

118.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

### Breach of Contract

119.    Ms. Mazengo realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

120.    Ms. Mazengo and the Defendants entered into an employment agreement, whereby Ms. Mazengo agreed to care for the Defendants' three children and clean their home, and the Defendants agreed to pay Ms. Mazengo $900 per week for a 40-hour workweek, for an hourly wage rate of $5.63, and an overtime wage rate of 1.5 times her regular wage for every hour over 40 that Ms. Mazengo worked per week.  The Defendants also contracted to provide Ms. Mazengo with health insurance, and to give her two weeks of paid vacation each year.  The contract also guaranteed payment of employer-side Social Security taxes on Ms. Mazengo's behalf.

121.    The Defendants intentionally and willfully failed and refused to pay Ms. Mazengo the wages promised in her contract, and refused to provide Ms. Mazengo with health insurance.  Ms. Mazengo never had a day off, and the Mzengi Defendants never paid Social Security or any other employment taxes.

122.    The Defendants refused to pay Ms. Mazengo the wages promised in her contract, and failed to provide Ms. Mazengo with health insurance with a conscious and deliberate

disregard of the interests of others such that their conduct may be called willful or wanton, and that such conduct has the character of outrage frequently associated with criminal conduct.

123.    At all times relevant hereto, the relationship between the Defendants and Ms. Mazengo was one of private master and servant, and Ms. Mazengo was not employed as if she were an employee of a governmental agency or authority.

124.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

<h3 style="text-align:center">NINTH CLAIM FOR RELIEF</h3>

<strong>Negligent Infliction of Emotional Distress</strong>

125.    Ms. Mazengo realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

126.    The Defendants negligently engaged in outrageous conduct toward Ms. Mazengo, causing her to suffer severe emotional distress.

127.    The Defendants owed a duty to Ms. Mazengo because it was foreseeable that forcing Ms. Mazengo to work more than sixteen hours per day, without any pay or time off, isolated from the outside world, deprived of her passport and visa, and subjected to threats of deportation and physical harm in a foreign country, far from her native Tanzania, would cause Ms. Mazengo to suffer severe emotional distress.

128.    As a proximate cause of the Defendants' conduct, Ms. Mazengo has suffered and will continue to suffer extreme emotional distress.

129.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

**WHEREFORE,** Plaintiff respectfully requests that judgment be granted as follows:

(a)     Money damages for each Claim for Relief;

(b)     Punitive and exemplary damages according to proof;

(c)     Attorneys' fees and costs for Plaintiff against the Defendants; and

(d)     Such other further relief as the Court may deem just and proper.

Plaintiff demands a trial by jury.

Dated: Washington, D.C.
      April 25, 2007

By: *Lorelie S. Masters*

Lorelie S. Masters (Bar No. 358686)
Martina E. Vandenberg (Bar No. 476685)
JENNER & BLOCK LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, D.C. 20005
Tel: (202) 639-6000
Fax: (202) 639-6066
mvandenberg@jenner.com

- and -

Elizabeth Keyes*
CASA OF MARYLAND, INC.
Federal Bar No. 27992
CASA of Maryland, Inc.
734 University Blvd. E.
Silver Spring, MD 20903
Tel: (301) 431-4185, ext. 218
Fax: (301) 431-4179
ekeyes@casamd.org

*Attorneys for Plaintiff, Zipora Mazengo*

*Not admitted to this Court.

21

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ZIPORA MAZENGO | ALAN S. MZENGI<br>STELLA MZENGI |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __88888__<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Lorelie S. Masters & Martina E. Vandenberg<br>Jenner & Block LLP<br>601 Thirteenth Street, N.W., Suite 1200 South<br>Washington, D.C. 20005<br>Tel: (202) 639-6000<br>Fax: (202) 639-6066 | |

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

● 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/
Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency
Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining
Order/Preliminary
Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*        **OR**        ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General<br>☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895** Freedom of Information Act<br>☐ **890** Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ⊗ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710** Fair Labor Standards Act<br>☐ **720** Labor/Mgmt. Relations<br>☐ **730** Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ **740** Labor Railway Act<br>☐ **790** Other Labor Litigation<br>☐ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights<br>Act)<br>☐ **443** Housing/Accommodations<br>☐ **444** Welfare<br>☒ **440** Other Civil Rights<br>☐ **445** American w/Disabilities-<br>Employment<br>☐ **446** Americans w/Disabilities-<br>Other | ☐ **110** Insurance<br>☐ **120** Marine<br>☐ **130** Miller Act<br>☐ **140** Negotiable Instrument<br>☐ **150** Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ **153** Recovery of Overpayment of<br>Veteran's Benefits<br>☐ **160** Stockholder's Suits<br>☐ **190** Other Contracts<br>☐ **195** Contract Product Liability<br>☐ **196** Franchise | ☐ **441** Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ **1** Original Proceeding   ○ **2** Removed from State Court   ○ **3** Remanded from Appellate Court   ○ **4** Reinstated or Reopened   ○ **5** Transferred from another district (specify)   ○ **6** Multi district Litigation   ○ **7** Appeal to District Judge from Mag. Judge

*(● marked on 1 Original Proceeding)*

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

18 U.S.C.  § 1595 - Trafficking and Forced Labor

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  4/25/07     SIGNATURE OF ATTORNEY OF RECORD  *Leslie S. Masters*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed *only* if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

**IV.**   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the *primary* cause of action found in your complaint. You may select only *one* category. You *must* also select *one* corresponding nature of suit found under the category of case.

**VI.**   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.