**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| ZIPORA MAZENGO | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:07-cv-00756 (RMC)(AK) |
| ALAN MZENGI, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| _____) | | |

**PLAINTIFF'S PRE-TRIAL BRIEF**

Plaintiff Zipora Mazengo, a twenty-seven-year-old woman trafficked to the United States from Tanzania, comes before this Court solely on the question of damages. She asks this Court to award her statutory damages for wages, compensatory damages, and punitive damages for the harm done to her by defendants Alan S. Mzengi and Stella Mzengi. The District Court entered default judgment in this matter on October 1, 2007 after the defendants failed to appear. Ms. Mazengo requested this hearing to press the Court to enter two broad categories of damages: statutory damages for more than four years of forced labor in the Mzengi home, and additional damages to compensate Ms. Mazengo for the true value of her labor and losses that extend far beyond mere wages. Although a trial is not necessary for the first category of damages, the second category does include damages not easily quantified without Ms. Mazengo's testimony and other evidence.[1]

---

[1] A schedule of witnesses whom Ms. Mazengo intends to call and exhibits she intends to enter into the record is attached herein as Exhibit A. A full itemization of damages is attached herein as Exhibit B.

Part I of this brief analyzes Ms. Mazengo's statutory damages and asks this Court to enter those damages immediately as a matter of law. By virtue of the defendants' default, the facts of this case are not in dispute. Neither is the defendants' liability for these damages. Parts II - V outline Ms. Mazengo's tort damages: restitution as a remedy for unjust enrichment, damages for emotional distress, and punitive damages. It is to establish these damages — which are more difficult to quantify — that Ms. Mazengo has requested this hearing.[2]

As noted above, the defendants have not appeared in this case. It is not known whether they will do so in the damages phase of the proceedings. But, as Part VI of the brief establishes, even if the defendants do appear, any attempt to raise the defense of diplomatic immunity would be unavailing. As Ms. Mazengo pled in her Complaint, the Mzengis surrendered their diplomatic immunity, if indeed they possessed such immunity, by engaging in prohibited commercial conduct for profit.[3] The defendants forced Ms. Mazengo to work as a virtual slave not only for their convenience in the household, but also as a cook and servant in their African-food catering business, run illegally from their home. The Mzengis' activities — which included catering dinner parties and an entire wedding — ran completely afoul of the commercial activities exception of the Vienna Convention on Diplomatic Relations, (the "Vienna Convention"), done April 18, 1961, 23 U.S.T. 3227, T.I.A.S. No. 7502, entered into force for the United States December 13, 1972. Commercial activity triggering the exception to the otherwise sweeping jurisdictional immunity afforded to diplomats under the Vienna Convention

---

[2] Because the federal Magistrate Act does not permit this Court to make a report and recommendation based on the findings of a jury, *see Gonzalez v. Rakkas,* 846 F. Supp 229, 231-35 (E.D.N.Y 1994); 28 U.S.C. § 636(b), Ms. Mazengo accepts that all remaining factual issues related to damages will be decided by the Court. She does not withdraw her original request for a jury trial in the event that another party intervenes, or the defendants appear, in this matter.

[3] Ms. Mazengo does not concede that the Mzengis have diplomatic immunity. The Mzengis must assert and prove that they are entitled to immunity on these grounds. 22 U.S.C. § 254d. They have not done so, having failed thus far even to appear.

leaves diplomats subject to suit in U.S. courts. Whatever immunity the Mzengi defendants might have possessed, they squandered by engaging in commercial activities outside of their official diplomatic functions.

## STATEMENT OF FACTS

The facts of this case are no longer in dispute. Ms. Mazengo has established that she lived and worked in the home of Alan and Stella Mzengi as a virtual slave between June 2000 and August 2004. She has established that, in violation of U.S. and international law, she was trafficked into the United States by the defendants, who fraudulently induced her to enter the U.S. while intending to seize her passport and place her in involuntary servitude. Compl. ¶¶ 16-24. She has already proven that she worked a minimum of 16.5 hours each day, 7 days each week for four years, caring for the Mzengis' three children, performing all of the cleaning, cooking all of the family meals, laundering all of the clothing, and staffing all of the family's parties. *Id.* ¶¶ 25-33. In addition, Ms. Mazengo has already established through her default judgment that she prepared large quantities of food for an under-the-table African food commercial catering business run out of the Mzengi family home. *Id.* ¶¶ 34-39. Finally, Ms. Mazengo has established that she worked four years not only without pay, but shut off from the outside world. *Id.* ¶¶ 44-51. The default judgment eliminates any doubt that Mr. and Mrs. Mzengi abused her both physically and psychologically during the 1,476 days she was trapped in the Mzengi household. Ms. Mazengo has already proven, for purposes of her damages case, that defendant S. Mzengis beat her, and that both of the Mzengi defendants screamed at her, threatened her, neglected her medical needs, and forced her to shovel snow barefoot. *Id.* ¶¶ 52-62. Most traumatic for Ms. Mazengo, the defendants refused to permit her to return to Tanzania

to see her dying sister.  Through their failure to appear, the defendants have conceded all of these facts.

## PROCEDURAL HISTORY

Ms. Mazengo filed suit in the District Court for the District of Columbia on April 25, 2007.  Ms. Mazengo filed affidavits of service on May 1, 2007, after serving Mr. Mzengi personally.  Mr. Mzengi accepted substitute service for his wife.  The Mzengis failed to answer the Complaint, or to make an appearance.  The District Court entered the default on June 5, 2007, noting that the defendants had failed to appear.  Ms. Mazengo filed for default judgment on June 22, 2007, and on August 15, 2007 the Court issued an order to show cause why the motion should not be granted.  The defendants again failed to appear, and the Court issued a default judgment against them on October 1, 2007.  The case has been referred to this Court for a hearing and a report and recommendation on damages.

## JURISDICTION AND VENUE

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1351, and 29 U.S.C. § 216(b).  This Court has supplemental jurisdiction over Ms. Mazengo's state-law claims pursuant to 28 U.S.C. § 1367.  This Court has jurisdiction over Ms. Mazengo's international-law claims pursuant to 28 U.S.C. §§ 1331 and 1367.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(d), because the Mzengi defendants are citizens of a foreign state.

## DISCUSSION

The defendants' failure to answer any of the factual allegations stated in Ms. Mazengo's Complaint must be interpreted by this Court as an admission that all of these allegations are true,

for "[w]hen a default judgment is entered, facts alleged in the complaint may not be contested."

*Webb v. District of Columbia*, 146 F.3d 964, 977 & n.26 (D.C. Cir. 1998) (quoting *Black v.*

*Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994)); Fed. R. Civ. P. 8(d).  Since the facts pled by Ms.

Mazengo are clearly sufficient to state numerous causes of action under federal and state law, the

only issue remaining for this Court to decide is that of damages.  Ms. Mazengo submits that she

is entitled as a matter of law to damages for her unpaid wages under Maryland state law and the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.  She further submits that both

federal and state law entitle her to additional compensatory damages for the fair market value of

her labor, her other pecuniary losses resulting from what she experienced, and the emotional

distress she has suffered.  Ms. Mazengo finally submits that both federal and state law also

entitle her to punitive damages.  Ms. Mazengo will prove at trial the amount of compensatory

damages beyond the statutory wages to which she is entitled.  Her testimony, combined with the

facts outlined in the Complaint, demonstrate Ms. Mazengo is also entitled to punitive damages.

## I.     MS. MAZENGO IS ENTITLED TO DAMAGES FOR UNPAID WAGES

The District Court granted Ms. Mazengo judgment under both of her claims for relief for

damages concerning unpaid wages under the FLSA and under Maryland state law.  As alleged in

the Complaint, recovery is fully available for Ms. Mazengo for both claims.

In contrast to all of the other claims raised by Ms. Mazengo and addressed below, Ms.

Mazengo provided the District Court with a sum certain of damages for violations of both the

FLSA and Maryland state law for the reasons explained below.  In fact, were these two claims

the only claims alleged by Ms. Mazengo, this hearing would not be necessary under Fed. R. Civ.

P. 55(b)(2), as default judgment would have been entered by the Clerk for the sum certain under

Fed. R. Civ. P. 55(b)(1).  As the order establishing this hearing is limited to determining

damages, and there are no open issues with respect to damages on either claim for unpaid wages, Ms. Mazengo respectfully requests that this Court immediately issue a partial recommendation for recovery of no less than $510,249.21 in damages under Maryland law, as well as reasonable attorneys' fees and costs. In the alternative,[4] Ms. Mazengo requests that the Court issue a recommendation for $256,250.62 in damages under the FLSA, as well as reasonable attorneys' fees and costs.[5]

A.    **Maryland Wage Law**

Under the Maryland's Wage and Hour Law, employers such as the Mzengis are required to pay their employee the required minimum wage denominated by law for the first 40 hours of work per week and then time-and-a-half overtime pay for hours beyond the initial 40 worked each week. Md. Code Ann., Lab. & Empl. §§ 3-413, 3-415; *see also Friolo v. Frankel*, 373 Md. 501, 513 (2003) (Maryland Wage and Hour Law is the "[s]tate parallel to the Federal Fair Labor

---

[4]    Ms. Mazengo recognizes that while recovery is available both under the FLSA and under Maryland law, damages for unpaid wages are not cumulative between the two claims. The Court should apply Maryland law to these claims. As the issue of damages is considered "substantive" rather than "procedural," this Court must apply state law to assess the damages to which Ms. Mazengo is entitled for the Maryland claims over which this Court exercises supplemental jurisdiction. *See Keene Corp. v. Ins. Co. of N. Amer.*, 597 F. Supp. 934, 938 (D.D.C. 1984). The determination as to which law to apply is governed by District of Columbia choice of law rules. *See Mastro v. Potomac Elec. Power Co.,* 447 F.3d 843, 858 (D.C. Cir. 2006) (federal court exercising supplemental jurisdiction applies choice of law rules of forum where it sits), *cert. denied*, 127 S. Ct. 1140 (2007). The District of Columbia employs the "government interest analysis" test, which applies the law of the jurisdiction that has the greatest relationship to the dispute. *See Vaughan v. Nationwide Mut. Ins. Co.*, 702 A.2d 198, 202-03 (D.C. 1997). Although venue is proper in this Court because one of the parties is an alien who can be sued in any jurisdiction, 28 U.S.C. § 1391(d), all of the parties reside in Maryland, which is also where virtually all of Ms. Mazengo's forced labor took place. Hence, Maryland has the greatest relationship with this dispute and the greatest interest in the application of its law to protect Maryland employees from forced labor practices occurring in Maryland and committed by Maryland residents.

[5] Ms. Mazengo's wage calculations can be found at Exhibit C. These figures represent her back wages under Maryland law, $170,083.07, trebled, and her back wages under the FLSA, $128,125.31, doubled.

Standards Act" and "requires, in relevant part, that employers pay the applicable minimum wage to their employees and, in [Md. Code Ann., Labor-Employment §§ 3-415 and 3-420], that they pay an overtime wage of at least 1.5 times the usual hourly wage for each hour over 40 that the employee works during one workweek"). At all times relevant to this case, the minimum wage required by Maryland state law was $5.15 per hour; the required wage for overtime work was $7.73 per hour. Further, under Maryland's Wage Payment and Collection Law, an employee may bring an action to collect wages; if a court determines that "an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." Md. Code Ann., Lab. & Empl. § 3-507.1.

In this case, the following facts are undisputed:

- Ms. Mazengo worked for the Mzengis from June 27, 2000, through August 18, 2004, Compl. ¶ 7;
- Instead of the normal eight-hour work day, the Mzengis required Ms. Mazengo to work 16.5 hours a day from 6:00 a.m. to at least 10:30 p.m. each day, id. ¶¶ 26-27;
- The Mzengis never paid Ms. Mazengo for the work she performed, id. ¶ 40;
- On several occasions, Ms. Mazengo requested wages and the Mzengis refused to pay and even threatened her, id. ¶ 41;
- The Mzengis required Ms. Mazengo to be available and on call 24 hours each day, responding to the family's demands around the clock, id. ¶ 27.

Throughout this entire period, Ms. Mazengo's employment with the Mzengis was one of servant and private master and fell within the meaning of the Maryland Wage and Hour Law.

By definition then, the Mzengis' intentional and willful failure both (1) to pay Ms. Mazengo the minimum wages required by law for the normal 40-hour work week from June 2000 until approximately August 2004 and (2) to pay Ms. Mazengo's overtime wages for work in excess of 40 hours constitute violations of Maryland's Wage and Hour Law. There is no bona fide dispute of these facts insofar as they have all been taken as true due to the Court's entry of

default judgment. Thus, the Mzengis have withheld Ms. Mazengo's wages in violation of the Maryland's Wage Payment and Collection Law, and Ms. Mazengo is entitled to trebled damages of not less than $510,249.21, plus reasonable attorneys' fees and costs of this action. Md. Code Ann., Lab. & Employ. § 3-427(d).

## B.    The Fair Labor Standards Act

The FLSA requires employers to pay employees engaged in commerce no less than a minimum wage established by statute, and require no more than a 40-hour work week without the employer paying one-and-a-half normal pay for each additional overtime hour. 29 U.S.C. §§ 206, 207; *see Rodriguez v. P.R. Fed. Affairs Admin.*, 435 F.3d 378, 380 (D.C. Cir. 2006), *cert. denied*, 127 S. Ct. 347 (2006).[6] At all times relevant to this case, that minimum wage was $5.15 an hour, and overtime was $7.73 an hour. 29 U.S.C. § 206 (2004). The Mzengis are "employers" within the meaning of the statute, 29 U.S.C. § 203(d), as they both are persons who acted directly or indirectly in the interest of an employer in relation to an employee. Both of the Mzengi defendants repeatedly forced Ms. Mazengo to work for at least 16.5 hours a day. *See* Compl. ¶¶ 7, 26-27. Further, to "employ" under the statute means "to suffer or permit to work," 29 U.S.C. § 203(g), which undoubtedly applies to the Mzengis, who assigned Ms. Mazengo a grueling regimen of work on a daily basis. Compl. ¶¶ 25-39. Finally, Ms. Mazengo is an "employee" insofar as she is an individual who the Mzengis employed in a private capacity rather than as an employee of a government agency or authority. 29 U.S.C. § 203(e); Compl. ¶ 94.

---

[6] Domestic workers are excluded from the overtime provisions of the FLSA; Ms. Mazengo's back wages under FLSA have been calculated using the minimum wage for all hours worked. 29 C.F.R. § 552.100(a)(2).

As established by the default judgment entered on her Complaint, Ms. Mazengo never received any wages from the Mzengis despite her repeated requests for payment.  Compl. ¶¶ 40-41.  The Mzengis' knowing refusal to pay such wages despite Ms. Mazengo's requests was willful and also illegal, as it contravened FLSA and its implementing regulations.  29 U.S.C. §§ 206, 215(a)(2).  Thus, Ms. Mazengo is entitled to her unpaid minimum wages of not less than $128,125.31 for the four-year period in question, as well as an equal amount in liquidated damages, and reasonable attorneys' fees and costs.  29 U.S.C. § 216.[7]

## II.    MS. MAZENGO IS ENTITLED TO FURTHER DAMAGES TO COMPENSATE HER LABOR ACCORDING TO THE PREVAILING WAGE FOR THE SERVICES SHE PROVIDED TO THE MZENGIS

In addition to her Maryland wage law and FLSA claims, to which she is entitled as a matter of law, Ms. Mazengo's tort claims under federal and state law entitle her to compensatory damages equal to the prevailing wage for the services she provided for the Mzengis.  The amount of the prevailing wage in excess of that required by the Maryland wage law and the FLSA is stated in Exhibit B and will be proven by the testimony of an expert at trial.

### A.    Ms. Mazengo Is Entitled to the Prevailing Wage for Her Services Under the Federal Trafficking Victims Protection Act

The federal Trafficking Victims Protection Act (TVPA), Pub. L. Nos. 106-386 (2000) & 108-193 (2003), prohibits recruitment and transportation of individuals with the knowledge that they will be subjected to involuntary servitude, commonly referred to as "human trafficking." 18 U.S.C. § 1590; *e.g. United States v. Maka,* 237 F. App'x 225, 227 (9th Cir. 2007).  It also

---

[7] While the FLSA permits employers to take appropriate credit for the reasonable cost or fair value of lodging and other facilities furnished to the employee by the employer, that credit may be taken "*only when the employee's acceptance of them is voluntary and uncoerced.*" 29 C.F.R. § 552.100(b)(2) (emphasis added).  Ms. Mazengo was held as a prisoner in the Mzengi home, and her acceptance of the food and lodging provided by the Mzengi defendants was not voluntary.

prohibits the closely related offense of inducing forced labor by "threats of serious harm,"

"physical restraint" or "abuse or threatened abuse of legal processes." 18 U.S.C. § 1589.

Sections 1590 and 1589 function primarily as criminal prohibitions, but 18 U.S.C. § 1595

expressly creates a corresponding civil remedy for any violation, through which a victim can

recover "damages and reasonable attorneys fees." Without question, the Mzengis' behavior falls

squarely within the realm of conduct that the TVPA was intended to prevent. *See* Compl. ¶¶ 52-

63.[8] The only remaining question is damages. Fed. R. Civ. P. 8(d).

      The extent of damages for a claim arising under federal law is also a federal question.

*Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 333 (D.C. Cir. 2003). To determine the most

appropriate recovery, courts must look in the first instance to the legislative intent of Congress.

*Bush v. Lucas*, 462 U.S. 367, 378-79 (1983). By enacting § 1595, Congress clearly intended to

permit trafficking and forced labor victims to recover money damages by bringing civil actions

in federal court. At the same time, while Congress did provide for criminal restitution, *see* 18

U.S.C. §§ 1593, 2259(b), it did not specify how to calculate civil damages recoverable under the

Act. Without any more specific legislative directive, the extent of a trafficking or forced labor

victim's allowable civil recovery under § 1595 is governed by federal common law. *Bush*, 462

U.S. at 378.

---

[8] Ms. Mazengo has also pled Involuntary Servitude in violation of the Thirteenth Amendment. Because the right not to be enslaved is of such fundamental importance, other federal district courts have recognized civil causes of action arising directly under the Thirteenth Amendment, *see, e.g.*, *Manliguez v. Joseph*, 226 F. Supp. 2d 377, 383-85 (E.D.N.Y. 2002); *Flood v. Kuhn*, 316 F. Supp. 271, 281 (S.D.N.Y. 1970), *aff'd*, 443 F. 2d. 264 (2d Cir. 1971), *aff'd*, 407 U.S. 258 (1972), although the only court in this District to even consider the issue in passing disagreed. *See Bhagwanani v. Howard University*, 355 F. Supp. 2d 294, 301 n.5 (D.D.C. 2005). The issue need not be decided here to award compensatory and punitive damages under federal tort law because Ms. Mazengo has clearly stated valid civil claims under the TVPA, a law enacted expressly to effectuate the goal of eliminating modern slavery, *see* Pub. L. No. 106-386 § 102(a), and pursuant to Rule 8(d), the defendants failed to contest those claims, which have now been established by the default judgment.

Because § 1595 is still a relatively new provision, there is no case law that directly addresses the calculation of civil damages in this context. *See Smith v. Husband*, 376 F. Supp. 2d 603, 612 (E.D. Va. 2005) (noting absence of case law). However, the underlying purpose of the TVPA, the eradication of modern slavery and human trafficking in the United States, clearly implicates the protection of important constitutional rights. *See* Pub. L. No. 106-386 § 102(a); Note 7, *supra*. There is a substantial body of federal common law governing the proper calculation of damages in suits to vindicate other constitutionally-protected interests where Congress has not specified a particular remedy. In particular, courts have devoted significant attention to the calculation of damages in suits arising under 42 U.S.C. § 1983, *e.g.*, *Carey v. Piphus*, 435 U.S. 247, 254-55 (1978); *Hobson v. Wilson,* 737 F.2d 1, 59 (D.C. Cir. 1984), *rev'd in part on other grounds, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), and in so-called *Bivens*-actions arising directly under the Constitution.[9] *Doe v. District of Columbia*, 697 F.2d 1115, 1123 (D.C. Cir. 1983). Ms. Mazengo submits that the constitutional interests to be vindicated in her case are similar to those at play in these other lines of precedent.

According to precedents controlling in both § 1983 and *Bivens*-actions, where, as has been established here, a plaintiff's constitutional rights have been violated, she is entitled to compensatory damages commensurate with the actual injury she suffered as a result of the violation. *Hobson*, 737 F.2d at 59; *Doe*, 697 F.2d at 1123 (citing *Carey,* 435 U.S. at 263-64). Where the plaintiff's constitutionally-protected interest corresponds with an interest protected by tort law, that law also determines the extent of plaintiff's recovery, although common-law rules

---

[9] *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

can be adapted if necessary to provide "fair compensation" to the plaintiff. *Carey*, 435 U.S. at 258.

In this case, the general common law of torts does provide a "starting point" from which to calculate the damages Ms. Mazengo is owed under the TVPA. *Hobson*, 737 F.2d at 60. According to the *Restatement (Second) of Torts*, one who has been "tortuously caused … to render services" to another may recover the value of her services or her lost earnings. *See Restatement (Second) Torts* § 932(a). Additional guidance regarding the most appropriate recovery is available from 18 U.S.C. §§ 1593 and 2259(b), the applicable restitution provisions.[10] Restitution for trafficking or forced labor under §§ 1593 and 2259 is calculated based on the "full amount of the victim's losses," defined to include "*the greater* of the gross income or value to the defendant of the victim's service or labor *or* the value of the victim's labor as guaranteed under … the Fair Labor Standards Act." *Id.* (emphasis added). Courts interpreting this language have found that the value to the defendant of the victim's services generally equates the prevailing wage for the work the victim performed. *United States v. Calimlim*, No. 04-02-248, 2007 WL 527481, at *1 (E.D. Wis., Feb. 14, 2007).

The TVPA's restitution provisions and federal common law thus support Ms. Mazengo's claim to recover according to the prevailing wage for the services she performed for the Mzengi defendants to the extent that the prevailing wage exceeds the wages to which she was legally entitled under the Maryland wage law and the FLSA. The amount of these damages in excess of the minimum wage will be proven at trial through the testimony of an expert.

---

[10] Although criminal restitution is distinct from civil damages, in many instances, the one functions as a "counterpart" to the other, *United States v. Sung*, 51 F.3d 92, 94 (7th Cir. 1995), and a guidepost for what constitutes an appropriate monetary calculation with respect to actual damages. *See, e.g., Stogsdill v. Healthmark Partners L.L.C.*, 377 F.3d 827, 833-34 (8th Cir. 2004); *Sung*, 51 F.3d at 94.

**B.    Ms. Mazengo Is Also Entitled to the Prevailing Wage for Her Services Under Maryland Tort Law Governing Unjust Enrichment**

Ms. Mazengo also has established a valid claim for unjust enrichment under Maryland law entitling her to the full value of her services. Unjust enrichment requires: 1) the plaintiff's conferral of a benefit on the defendant; 2) the defendant's knowledge or awareness of the benefit; and 3) circumstances rendering inequitable defendant's acceptance of the benefit without full compensation. *Mona v. Mona Electric Group, Inc.*, No. 2609, ---A.2d---, 2007 WL 2671116, at *18 (Md. Ct. Spec. App., Sept. 13, 2007). The Mzengis' fraudulent and abusive exploitation of Ms. Mazengo to obtain the benefit of her labor clearly meets this standard. *Cf. Cutler v. Wal-Mart Stores, Inc.*, 175 Md. App. 177, 195-96, 927 A.2d 1, 12 (2007) (individual proof required to show unjust enrichment from labor of another), *cert. denied*, 401 Md. 173, 931 A.2d 1095 (2007). The defendants must now compensate Ms. Mazengo in full. Again, this Court need only determine the amount of damages. *See* Fed. R. Civ. P. 8(d).

The compensation the Mzengis owe Ms. Mazengo consists of "restitution — the disgorgement of the benefits that it would be unjust for the defendant to keep." *Boyd v. Bell-Atlantic-Maryland, Inc.*, 390 Md. 60, 82, 887 A.2d 637, 650 (2005) (citing *Consumer Protection Div. v. Morgan*, 304 Md. 731, 776, 874 A.2d 919, 944-45 (2005)) (other citations omitted). The calculation of unjust enrichment damages is not unlike that for the equitable remedy of *quantum meruit*. In both instances, the focus is not on the plaintiff's loss but on the defendant's unfair gain. *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Comm'rs*, 155 Md. App. 415, 451-455, 843 A.2d 252, 273-76 (2004). Although Maryland courts have not specifically opined on the best way to assess a defendant's gain from uncompensated labor for the tort of unjust enrichment, they have stated that the ideal remedy in *quantum meruit* is the fair market

value of the labor performed. *Id.* at 476, 843 A.2d at 288; *see also Somuah v. Flachs*, 352 Md. 241, 263-264, 721 A.2d 680, 691-92 (1998); *Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 358, 658 A.2d 680, 683 (1995). A fair market value approach is even more justified under tort law, since the defendants' misconduct in such cases justifies depriving them of any profit they would otherwise receive from paying the plaintiff wages less than the true value of her labor. *Cf. Consumer Prot. Div. v. Morgan*, 387 Md. 125, 169-90, 874 A.2d 919, 945 (2005) (calculating the defendant's unjust enrichment as the additional profit earned through his deception).

Having established unjust enrichment, Ms. Mazengo is now entitled to the return of the full benefit the Mzengis illegally gained from her services. The end result is virtually identical to that from Ms. Mazengo's TVPA claims: she is entitled to recover not only the minimum wages to be awarded as a matter of law, but also additional wages the Mzengis would have had to pay to obtain her services on the labor market.

## III. MS. MAZENGO IS ALSO ENTITLED TO COMPENSATION FOR OTHER PECUNIARY LOSSES SHE WILL INCUR DUE TO HER VICTIMIZATION BY THE MZENGIS

In addition to compensation for services she provided to the Mzengis, Ms. Mazengo is also entitled to compensation for all other expenses she has incurred or will incur as result of her victimization. These expenses include any costs incurred for her eventual journey back to Tanzania, the loss of Social Security benefits, and lost wages during the period she could not work following her escape. The amount of these expenses will be proven at trial through Ms. Mazengo's testimony.

As explained above, Ms. Mazengo may recover under the TVPA and federal common law for all pecuniary losses resulting from the Mzengis' actions towards her. *See Hobson*, 737

F.2d at 59-60. According to the *Restatement*, a plaintiff tortuously induced to labor for another is entitled to recover not only the value of her services but also for "other harm caused by the defendant's conduct." *See Restatement (Second) of Torts* § 932(b); *see also id.* cmt. c (plaintiff may recover for all other items of harm legally caused by the defendant's wrongful act). In addition, U.S. law requires mandatory restitution of a trafficking victim's medical, psychiatric and rehabilitative expenses, attorneys' fees, and "any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b); 18 U.S.C. § 1593(b)(1) (directing the defendant to pay the full amount of the victim's losses). This language has been interpreted in the criminal context to encompass not only present, but also future losses. *See, e.g.*, *United States v. Laney*, 189 F.3d 954, 966-67 (9th Cir. 1999) (sexual abuse victim could recover for future psychiatric counseling).

In addition to her TVPA claims and unjust enrichment, Ms. Mazengo is also entitled to recover on her claim for fraudulent inducement.[11] Her fraud damages equal her total losses as a result of the Mzengis' misrepresentations. *Hoffman v. Stamper*, 385 Md. 1, 36, 867 A.2d 276, 297 (2005); *Rozen v. Greenberg*, 165 Md. App. 665, 678-79, 886 A.2d 924, 932 (2005). These encompass not only her direct pecuniary injury such as lost wages, but also all other past and future harms. *See, e.g.*, *B.N. v. K.K.*, 312 Md. 135, 145, 149-50, 538 A.2d 1175, 1180, 1182-83 (1988) (plaintiff could recover for past and prospective medical and psychological consequences of contracting herpes from defendant, who had claimed that he was free of any sexually

---

[11] Fraudulent inducement is a subset of civil fraud. *See Rozen v. Greenberg*, 165 Md. App. 665, 674-75, 886 A.2d 924, 929-30 (2005). In all fraud cases, the elements of a valid claim include: 1) a false representation by the defendant; 2) defendant's knowledge of the falsity of the representation or reckless indifference to the truth; 3) defendant's purpose in making the false representation was to defraud the plaintiff; 4) justifiable reliance by the plaintiff on the defendant's misrepresentation; and 5) resulting compensable injury to the plaintiff. *Id.* There is little doubt that Ms. Mazengo, who was induced to journey to the United States with the promise of a legitimate job to her enormous detriment, has successfully pled, and now established, fraud.

transmitted disease when the parties had intercourse). The end result is virtually identical to Ms. Mazengo's damages under the TVPA. Her losses will be proven at trial.

## IV.    MS. MAZENGO IS ENTITLED TO DAMAGES FOR EMOTIONAL DISTRESS

In addition to damages for her economic losses resulting from her victimization by the Mzengis, federal and Maryland law also entitle Ms. Mazengo to recover for her emotional distress, which she pled in Claim Nine of her Complaint and to which she will testify at trial.

Although federal common law requires Ms. Mazengo's recovery here to be tailored to her provable injuries, *Hobson*, 737 F.2d at 59, that recovery is not limited to pecuniary losses. Following the Restatement and the progeny of the Supreme Court's *Carey* decision in this Circuit, a plaintiff may also recover for "emotional distress" resulting from the deprivation of a constitutionally protected interest, to the extent that the fact finder believes that the distress she suffered is attributable to the deprivation. *Id.* at 61-62 & n.167 (citing *Carey*, 435 U.S. 263-64 & n.20); *Restatement (Second) of Torts* § 905 (1979). This distress can be demonstrated solely through the plaintiff's testimony. For instance, in *Burns v. Long*, No. CA 84-3031, 1992 WL 29971, at *6 (D.D.C., Feb. 7, 1992), a prisoner testified that he was denied meals comporting with his religious dietary restrictions and was awarded damages for his resulting mental anguish. The court held that his testimony was sufficient to prove his suffering; there was no requirement that he proffer an expert opinion or medical records. *Id.*; *see also Langevine v. Dist. of Columbia*, 106 F.3d 1018, 1025 (D.C. Cir. 1997) (plaintiff could recover based in part on testimony that her false arrest caused her emotional distress and feelings of humiliation and that the continued to feel "spiritually wounded" by her ordeal).

Maryland also permits recovery for emotional distress to the extent that such distress is accompanied by or results in a "physical" injury. *Hoffman*, 385 Md. at 38, 867 A.2d at 298. In

this instance, "the term 'physical' [is] not used in its ordinary dictionary sense, but instead is used to represent that the injury for which recovery is sought is capable of objective determination" through some type of other symptom. *Id.* at 35, 867 A.2d at 296 (quoting *Vance v. Vance*, 286 Md. 490, 500, 408 A.2d 728, 733-34 (Md. 1979)). In both *Hoffman* and *Vance* the Maryland Court of Appeals provided a non-exhaustive list of potential "objective" manifestations of emotional distress, including: depression, inability to work or perform routine household chores, loss of appetite, insomnia, nightmares, weight loss, extreme nervousness and various physical symptoms like fainting, chest pains, headaches and upset stomachs. *Hoffman*, 385 Md. at 34-35, 867 A.2d at 296; *Vance v. Vance*, 286 Md. 490, 500-01, 408 A.2d, 728, 733-34 (1979). As under federal law, the plaintiff's own testimony alone is sufficient to prove these objective manifestations. *See, e.g.*, *Hoffman*, 385 Md. at 38, 867 A.2d at 298 (plaintiff's testimony that, whenever he began thinking about defendant's fraud, he would get headaches and vomit was sufficient to demonstrate right to recovery).

Ms. Mazengo will testify at trial to the terrible distress she suffered because of the Mzengis' mistreatment of her, which did result in numerous physical symptoms. Ms. Mazengo suffered from severe headaches, depression, insomnia, inability to concentrate or complete tasks, and traumatic distress following her escape from the Mzengi home. She suffered severe emotional trauma due to the defendants' refusal to permit her to return to Tanzania to see her sister before her death. Ms. Mazengo asks that this Court determine appropriate compensation for her emotional harm.

## V.    FINALLY, MS. MAZENGO IS ALSO ENTITLED TO PUNITIVE DAMAGES

The malicious, outrageous character of the Mzengis' treatment of Ms. Mazengo entitles her to punitive damages under both federal and state law, with the size of her award committed to the sound discretion of this Court.

Punitive damages are available on Ms. Mazengo's federal claims if the defendants acted with "evil motive or intent," with "reckless or callous indifference" to her federally protected rights, *Smith v. Wade*, 461 U.S. 30, 56 (1983), or otherwise engaged in "outrageous conduct." *Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27, 52 (D.D.C. 2001); *Restatement (Second) of Torts* § 908 (1979). The focus of a punitive damages inquiry is on "the character of the tortfeasor's conduct — whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Burns*, 1992 WL 29971, at *7 (quoting *Hernandez-Tirado v. Artau*, 874 F.2d 866, 868-69 (1st Cir. 1989)). Whether to award punitive damages under federal common law is in the hands of the fact-finder, whose award may only be set aside if it is "beyond all reason" or "so great as to shock the conscience," such that it violates constitutional due process. *Bolden v. J&R, Inc.*, 37 F. App'x 543, 543 (D.C. Cir. 2002) (per curiam) (quoting *Langevine*, 106 F.3d at 1024); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583-84 (1996). Although due process itself requires some degree of proportionality between an award and the harm suffered by the plaintiff, *see State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003), there is no separate federal common law standard for setting aside otherwise "excessive" awards. *Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279-80 (1989); *cf. Walker v. Norris*, 917 F.2d 1449, 1459-60 (6th Cir. 1990) (amount of punitive damages committed to jury's "sound discretion").

Punitive damages are also available on Ms. Mazengo's Maryland tort claims. In contrast to federal law, an award of punitive damages under Maryland law requires a showing of "[a]ctual malice," which equates to a showing that the defendant's conduct was characterized by "evil motive, intent to injure, ill will, or fraud." *Owens-Illinois v. Zenobia*, 325 Md. 420, 460, 601 A.2d 633, 653 (1992). In fraud cases, the plaintiff must demonstrate defendant's actual knowledge that she was making a false representation, rather than mere recklessness. *Hoffman*, 385 Md. at 42, 867 A.2d at 300-01. For an offense like unjust enrichment, actual malice equates to "consciousness of wrongdoing." *See Dacars Motors of Silver Springs, Inc. v. Borzym*, 379 Md. 249, 266, 841 A.2d 828, 838 (2004) (discussing similar tort of conversion). Because of the retributory, quasi-penal nature of punitive damages, in all cases actual malice must be shown by clear and convincing evidence. *Id.* at 267; 841 A.2d at 838-39.

The Mzengis' malicious, abusive, and criminal treatment of Ms. Mazengo is discussed at length in the Complaint and will also be the subject of her forthcoming testimony before this Court. Ms. Mazengo submits that it was sufficiently outrageous and reprehensible to more than justify an award of punitive damages under federal law, as well as under the more rigorous Maryland standard. *Cf., e.g. Hoffman*, 385 Md. at 44-48, 867 A.2d at 302-04 (punitive damages for fraud justified by reasonable inference from defendant's conduct that he actually knew representations he made were false); *Borzym*, 379 Md. at 266-67, 841 A.2d at 838 (punitive damages for conversion justified by abusive treatment plaintiff received when he attempted to reclaim converted property from defendants). The size of that award is committed to this Court's discretion.

## VI. DIPLOMATIC IMMUNITY DOES NOT DEFEAT MS. MAZENGO'S CLAIMS.

The defense of diplomatic immunity is an affirmative defense, and one that has not been raised in this litigation. Because defendants have not raised diplomatic immunity, Ms. Mazengo believes that it is unnecessary to litigate this issue. Nevertheless, to the extent that defendants belatedly seek to raise diplomatic immunity in this matter, Ms. Mazengo contends that the defendants squandered their immunity by engaging in commercial activities for profit. Article 31(1) of the Vienna Convention on Diplomatic Relations sets out three exceptions that, if established, will abrogate diplomatic immunity. Under Article 31(1)(c), a diplomat does not enjoy immunity from the civil and administrative jurisdiction of the receiving state where the action relates to "any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions." The Vienna Convention prohibits diplomats from engaging in trade or business activity unrelated to diplomatic work. Article 42 of the Vienna Convention states that a "diplomatic agent shall not in the receiving State practi[c]e for personal profit any professional or commercial activity." The Fourth Circuit, interpreting this commercial activities exception under Article 31(1)(c), noted that the signatories to the Vienna Convention intended Article 31(1)(c) to mean "commercial activity exercised by the diplomatic agent outside his official functions." *Tabion v. Mufti*, 73 F.3d 535, 538-39 (4th Cir. 1996) (quotation marks omitted). The running of a catering company from a home fits precisely within the prohibition against engaging in commercial activity for profit. It is Ms. Mazengo's

contention that the defendants have not raised a defense of diplomatic immunity because the defendants' actions fit squarely within the exception. The defense, therefore, does not apply.[12]

## **CONCLUSION**

Accordingly, the Plaintiff respectfully requests that this Court enter a recommendation for a judgment as a matter of law on Ms. Mazengo's wage claims. This judgment should be for no less than $510,249.21 in trebled damages for unpaid wages under Maryland state law, as well as reasonable attorneys' fees and costs. Alternatively, should the Court determine that federal law applies, Ms. Mazengo asks that this Court enter a recommendation for judgment as a matter of law under the Fair Labor Standards Act for not less than $128,125.31, an equal amount of liquidated damages, and reasonable attorneys' fees and costs. On all other claims, the Plaintiff respectfully requests a hearing to determine the appropriate amount of damages.

---

[12] At a minimum, an immunity defense should not be entertained without giving Plaintiff an opportunity to engage in discovery and to brief these issues in greater depth.

Respectfully submitted,

Dated: Washington, D.C.
      November 23, 2007

*Lorelie Masters* (msv)

Lorelie S. Masters (Bar No. 358686)
Martina E. Vandenberg (Bar No. 476685)
Anjan Choudhury (Bar No. 497271)
Daniel I. Weiner*

    * Admitted Pro Hac Vice

JENNER & BLOCK LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC  20005
Tel: (202) 639-6046
Fax: (202) 639-6066
lmasters@jenner.com
mvandenberg@jenner.com
achoudhury@jenner.com
dweiner@jenner.com

*Attorneys for Plaintiff, Zipora Mazengo*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 23, 2007, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system.  No counsel for the defendants has made an appearance in this

matter.  Service was accomplished on the defendants through regular U.S. mail this twenty-third

day of November 2007 at their last known residence, 1820 Middlebridge Drive, Silver Spring,

Maryland 20906, and at defendant Alan Mzengi's place of work, Embassy of the United

Republic of Tanzania, 2139 R Street, N.W., Washington, D.C. 20008.


/s/  Martina E. Vandenberg
Martina E. Vandenberg

*Exhibit A*
*Schedule of Witnesses*

*Exhibit A*

*Schedule of Witnesses*

| Order | Witness | Nature of Testimony | Approximate Length |
|---|---|---|---|
| 1. | Ms. Zipora Mazengo c/o 734 East University Blvd. Silver Spring, MD 20903 | Ms. Mazengo will testify to the harm she suffered at the hands of Mr. and Mrs. Mzengi during the time period that she worked for them and since her flight from their home. | 2 Hours |
| 2. | Mr. Gary Ray* Labor Economist Utah Department of Workforce Services Salt Lake City, UT 84145[1] | Mr. Ray will provide expert testimony regarding the prevailing wage to which Ms. Mazengo is entitled for the services she provided to the Mzengis. | 1 Hour |

*Trial Exhibits*

| Order | Title | Date |
|---|---|---|
| 1. | Complaint | April 25, 2007 |
| 2. | Employment Contract | June 12, 2000 |
| 3. | Final Expert Report of Gary Ray | November 30, 2007 |
| 4. | Price Quote:  Baltimore/Washington International Airport to Dar es Salaam (British Airways) | November 23, 2007 |

---

[1] Mr. Ray will appear before the Court as an independent expert, not under the auspices of the Utah Department of Workforce Services, whose views on this matter he in no way purports to represent.

*Exhibit B*
*Itemization of Damages*

*Exhibit B*
*Itemization of Damages*

| Damages | Amount | Basis for Calculation |
|---|---|---|
| Statutory Minimum Wage | **$170,083.07** (applying Maryland wage laws)<br>or<br>**$128,125.31** (applying FLSA) | Facts pled in the Complaint |
| Additional Statutory Damages | **$340,166.14** (applying Maryland wage laws)<br>or<br>**$128,125.31** (applying FLSA) | Facts pled in the Complaint |
| Additional Compensatory Tort Damages For Trafficking and Forced Labor in violation of the TVPA, and Unjust Enrichment under Maryland Law | **$47,749.53** (applying Maryland wage laws)<br>or<br>**$89,707.29** (applying FLSA) | Testimony of Mr. Ray regarding the prevailing wage for the services Ms. Mazengo provided to the Mzengis. The statutory minimum wage (see above) has been subtracted from the prevailing wage as calculated by Mr. Ray. |
| Additional Compensatory Tort Damages For Trafficking and Forced Labor in violation of the TVPA, and Fraud under Maryland Law | **$28,034.08** | Testimony of Ms. Mazengo, Mr. Ray & Trial Exhibit 4 (British Airways Price Quote) |
| Additional Compensatory Damages for Ms. Mazengo's Emotional Distress | At the Discretion of the Court. | Testimony of Ms. Mazengo |
| Punitive Damages | At the Discretion of the Court. | Facts Pled in the Complaint; Testimony of Ms. Mazengo |

*Exhibit C*
*Wage Calculations*

## Maryland Law

| | | |
|---|---|---|
| Minimum Wage | Hours per Day | 8 |
| | Days per Week | 5 |
| | Hourly Wage | $5.15 |
| | Earnings per Week | $206 |
| Overtime | Hours per Week | 75.5 |
| | Hourly Wage | $7.73 |
| | Earnings per Week | $583.62 |
| Total Earnings | Minimum Wage Earnings plus Overtime Earnings per Week | $789.62 |
| | Weeks | 215.4 |
| | Total Earnings | $170,083.07 |
| Total Damages | Total Earnings Trebled | $510,249.21 |

## Fair Labor Standards Act

| | | |
|---|---|---|
| Minimum Wage | Hours per Day | 16.5 |
| | Days per Week | 7 |
| | Hourly Wage | $5.15 |
| | Earnings per Week | $594.83 |
| Total Earnings | Minimum Wage Earnings per Week | $594.83 |
| | Weeks | 215.4 |
| | Total Earnings | $128,125.31 |
| Liquidated Damages | Total Earnings Doubled | $256,250.62 |